**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Katherine E. Tammaro, Esq. (Atty. I.D. No. 010102005)
7 Giralda Farms
Madison, New Jersey 07940
Tel: (973) 624-0800; Fax: (973) 624-0808
katherine.tammaro@wilsonelser.com
*Attorneys for Plaintiff Hartford Casualty Insurance Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| HARTFORD CASUALTY INSURANCE | : | |
| COMPANY, | : | Civil Action No. |
| | : | |
| Plaintiff, | : | **COMPLAINT FOR** |
| | : | **DECLARATORY JUDGMENT** |
| v. | : | |
| | : | |
| SMARTLINX SOLUTIONS, LLC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HARTFORD CASUALTY INSURANCE COMPANY ("Hartford"), by and through its attorneys, Katherine E. Tammaro of Wilson Elser Moskowitz Edelman & Dicker LLP, for its Declaratory Judgment Complaint against SMARTLINX SOLUTIONS, LLC ("SmartLinx"), states as follows:

## STATEMENT OF THE CASE

1.      This action seeks a declaration, pursuant to 28 U.S.C. §2201, that Hartford owes no insurance coverage obligations to SmartLinx for the claims raised in the putative class action lawsuit styled: *Dante Simpson, on behalf of himself and all other persons similarly situated, known and unknown v. Our Lady of Angels Retirement Home and SmartLinx Solutions, LLC*, Case No. 2020-L-000826, filed in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois

(the "Underlying Action"). A copy of the Amended Class Action Complaint filed in the Underlying Action is attached hereto as "**Exhibit A**."

## PARTIES

2.      Hartford is an insurance company incorporated under the laws of the State of Indiana with its principal place of business at One Hartford Plaza, Hartford, Connecticut.

3.      SmartLinx is a Delaware limited liability company with its principal place of business in Iselin, New Jersey.

4.       Based on a diligent pre-filing investigation and a review of annual filings submitted to various States by SmartLinx, it is alleged upon information and belief that the following individuals are members of SmartLinx: Alex Solovey, Alex Zeif, Jimmy Solovey, Marina Aslanyan, Nick Dresher, and Pasquale Debenedictis.

5.      Upon information and belief, the members of SmartLinx are citizens of New Jersey, New York, and South Carolina.

6.      Upon information and belief, none of the members of SmartLinx are citizens of Indiana or Connecticut.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, Hartford is a citizen of Connecticut and Indiana, and SmartLinx is a citizen of New Jersey, New York, and South Carolina.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because SmartLinx's principal place of business is located within the geographical boundaries of this District and this coverage dispute concerns insurance coverage for an insurance policy issued within the geographical boundaries of this District.

2

## FACTS

A.     *THE UNDERLYING ACTION*

9.     On October 9, 2020, Dante Simpson ("Underlying Plaintiff") commenced the Underlying Action against Our Lady of Angels Retirement Home ("OLA") alleging violations of the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

10.     On August 19, 2022 Underlying Plaintiff filed an Amended Complaint naming SmartLinx as a defendant and alleging SmartLinx also violated BIPA. *See* Ex. A.

11.     Underlying Plaintiff alleges he was employed by OLA as a housekeeper from approximately December 2018 through sometime in 2020. *See* Ex. A.

12.     During the course of his employment with OLA, Underlying Plaintiff claims he and other employees were required to use a biometric clock system to scan their fingerprints to record their time worked. *See* Ex. A.

13.     Underlying Plaintiff claims the biometric clock system was provided to OLA by SmartLinx and that the clocks interfaced with SmartLinx software to verify the identity of a particular employee and maintain a record of various information, including hours worked. *See* Ex. A.

14.     SmartLinx allegedly violated BIPA by, among other things, collecting, capturing, possessing, and disseminating biometric identifiers or information and selling, leasing, trading, or otherwise profiting from the integration of the biometric data to an unknown number of third-party staffing agencies and other nursing facilities. *See* Ex. A.

15.     The Underlying Complaint defines the putative class as: "All employees in the State of Illinois who scanned their fingerprints or other biometric identifiers on or into the SmartLinx

3

[sic] biometric timeclock mechanism, or whose biometric identifiers, as defined under 740 ILCS 14/10, were utilized in any manner in any software owned, developed, acquired, modified and/or[] licensed by SmartLinx to third-parties or for Smartlinx's own internal use, between May 13, 2015 and the present, without first executing a written release." *See* Ex. A.

16. Underlying Plaintiff alleges four causes of action against SmartLinx:

(i) <u>Count II</u> – Violation of 740 ILCS 14/15(b), for allegedly capturing or collecting Underlying Plaintiff's and the Putative Class' biometric identifiers and information without informing them in writing or obtaining their written consent;

(ii) <u>Count IV</u> - Violation of 740 ILCS 14/15(a), for allegedly possessing Underlying Plaintiff's and the Putative Class' biometric identifiers and information without creating and following a written policy, made available to the public, establishing a retention schedule and destruction guidelines;

(iii) <u>Count VI </u>- Violation of 740 ILCS 14/15(d), for allegedly disclosing or otherwise disseminating Underlying Plaintiff's and the Putative Class' biometric identifiers and information without first obtaining written consent; and

(iv) <u>Count VII </u>- Violation of 740 ILCS 14/15(c), for allegedly selling, leasing, trading, or otherwise profiting from Underlying Plaintiff's and the Putative Class' biometric identifiers and information without first obtaining written consent.

*See* Ex. A.

4

17.    On August 3, 2022, OLA filed a third-party complaint (the "Third-Party Complaint") against SmartLinx claiming SmartLinx breached a provision of their agreement whereby SmartLinx represented that it would comply with all applicable laws. A copy of the Third-Party Complaint is attached as "**Exhibit B**."

18.    OLA also alleged SmartLinx assured OLA leadership during an in-person meeting that the use of the biometric timeclock would not expose OLA to liability under BIPA. *See* Ex. B.

19.    The Third-Party Complaint asserts causes of action against SmartLinx for Breach of Contract, Equitable and Implied Indemnity, and Fraudulent Inducement. *See* Ex. B.

**B.**    *THE POLICIES*

20.    Below is a chart reflecting the policies providing business liability coverage ("Business Liability Coverage"), Employment Practices Liability Coverage ("EPL Coverage") and umbrella liability coverage (the "Umbrella Coverage") issued by Hartford to SmartLinx (collectively, the "Policies"). The Policies are attached as exhibits in accordance with the chart below.

| POLICIES | | | |
|---|---|---|---|
| Attached as Exhibit | Effective Dates | Policy No. | Limit |
| C | May 3, 2015 to May 3, 2016 | 13 SBA TI4881 | $1 million Personal and Advertising; $2 million aggregate; $5,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |

5

| D | May 3, 2016 to May 3, 2017 | 13 SBA IO3257 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |
|---|---|---|---|
| E | May 3, 2017 to May 3, 2018 | 13 SBA IO5520 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |
| F | May 3, 2018 to May 3, 2019 | 13 SBA IO5520 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |
| G | May 3, 2019 to May 3, 2020 | 13 SBA IO5520 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |

286443618v.1

| | | | |
|---|---|---|---|
| **H** | May 3, 2020 to May 3, 2021 | 72 SBA BD2429 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |
| **I** | May 3, 2021 to May 3, 2022 | 72 SBA BD2429 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |
| **J** | May 3, 2022 to May 3, 2023 | 72 SBA BD2429 | $1 million Personal and Advertising; $2 million aggregate; $10,000 EPL Coverage; $5 million occurrence and aggregate for Umbrella Liability Coverage. |

**C.** _**BUSINESS LIABILITY COVERAGE**_

21.     Subject to all of their terms, the Business Liability Coverage, Form SS 00 08 04 05,

provides certain general commercial liability coverage and states, in part:

**A.**     _**COVERAGES**_

**1.**     _**Business Liability Coverage (Bodily Injury, Property Damage, Personal And Advertising Injury)**_

_**Insuring Agreement**_

7

> **a.**    *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.*
>
> * * *
>
> **b.**    *This insurance applies:*
>
> > **(1)**    *To "bodily injury" and "property damage" only if:*
> >
> > > **(a)**    *The "bodily injury" or "property damage" is caused by an "occurrence" . . .*
> > >
> > > **(b)**    *The bodily injury" or "property damage" occurs during the policy period . . .*
> >
> > * * *
> >
> > **(2)**    *To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.*

*See* Exs. C-J.

22.    The Business Liability Coverage also contains the following exclusions:

> **B.**    **EXCLUSIONS**
>
> > **1.**    ***Applicable To Business Liability Coverage***
> >
> > *This insurance does not apply to:*
> >
> > > **a.**    ***Expected Or Intended Injury***
> > >
> > > > **(1)**    *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . .*

8

(2) *"Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".*

**b.   Contractual Liability**

*(1)   "Bodily injury" or "property damage"; or*

*(2)   "Personal and advertising injury"*

*for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.*

*This exclusion does not apply to liability for damages because of:*

*(a) "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement; . . .*

\* \* \*

**j.   Professional Services**

*"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:*

*(11)   Computer consulting, design, or programming services, including web site design.[1]*

\* \* \*

**p.   Personal And Advertising Injury**

*"Personal and advertising injury":*

---

[1] The Technology Services Coverage (Limited) Endorsement, Form SS 40 59 10 08, in the 2015-16 and 2016-17 Policies, and the Technology Services Extension Endorsement (Limited), Form SS 40 59 03 16 in the Policies effective 2017-23, each provide this exclusion does not apply to "bodily injury" or "property damage" arising out of the insured's "technology services".

\* \* \*

**(2)**      *Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;*

**(8)**      *Arising out of an offense committed by an insured whose business is:*

   **(a)**      *Advertising, broadcasting, publishing or telecasting;*
   **(b)**      *Designing or determining content of web sites for others; or*
   **(c)**      *An Internet search, access, content or service provider.*

\* \* \*

**(11)**      *Arising out of the violation of a person's right of privacy created by any state or federal act.*

   *However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;*

\* \* \*

**(15)**      *Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost, or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.[2]*

---

[2] Exclusions B.1.p(8) and B.1.p(15) are modified by Business Liability Coverage Form Amendatory Endorsement SS 00 60 09 15, which is a part of the Policies effective 2016-23. In the 2015-16 Policy, Exclusions B.1.p(8) and B.1.p(15) are amended by the Amendment of Exclusion and Definition – Personal and Advertising Injury Endorsement, Form SS 41 62 06 11. The provisions in the 2015-16 Policy are the same as the provisions cited herein

* * *

**r.      *Employment-Related Practices***

*"Personal and advertising injury" to:*

*(1)      A person arising out of any "employment– related practices"; or*

*(2)      The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.*

*This exclusion applies:*

*(a)      Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;*

*(b)      Whether the insured may be liable as an employer or in any other capacity; and*

*(c)      To any obligation to share damages with or repay someone else who must pay damages because of the injury.[3]*

* * *

**t.      *Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information***

*"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:*

---

with regard to Exclusion B.1.p(8). In the 2015-16 Policy, Exclusion B.1.p(15), as amended, states "'Personal and advertising injury' arising out of discrimination committed by or at your direction, or the direction of any partner, member, manager, 'executive officer', director, stockholder or trustee of the insured."

[3] Exclusion B.1.r. is modified by Business Liability Coverage Form Amendatory Endorsement SS 00 60 09 15, which is a part of the Policies effective 2016-23. In the 2015-16 Policy, Exclusion B.1.r. states "'Bodily injury' or 'personal and advertising injury' to: (1) A person arising out of any: . . . (c) Employment related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . ."

286443618v.1

(1)     *The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;*

(2)     *The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or*

(3)     *Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.*

*See* Exs. C-J.

23.     The Business Liability Coverage also contains the following definitions:

**G.     *LIABILITY AND MEDICAL EXPENSES DEFINITIONS***

\* \* \*

**5.**     *"Bodily injury" means physical:*

a.     *Injury;*
b.     *Sickness; or*
c.     *Disease*

*sustained by a person and, if arising out of the above, mental anguish or death at any time*

\* \* \*

**16.**     *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

\* \* \*

**17.**     *"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

a.     *False arrest, detention or imprisonment;*

b.     *Malicious prosecution;*

c.     *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or*

12

*premises that the person or organization occupies, committed by or on behalf of its owner, landlord or lessor;*

d.    *Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

e.    *Oral, written or electronic publication of material that violates a person's right of privacy;*

f.    *Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";*

g.    *Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".[4]*

\* \* \*

**20.**    *"Property damage" means:*

**a.**    *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

**b.**    *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

*As used in this definition, "electronic data" is not tangible property.*

*See* Exs. C-J.

24.    The Business Liability Coverage effective 2015-20 also contains the following endorsement, Form SS 50 50 12 01:

### PERSONAL AND ADVERTISING INJURY EXCLUSION – LIMITED

*This endorsement modifies insurance provided under the following:*

### BUSINESS LIABILITY COVERAGE FORM

---

[4] The definition of "personal and advertising injury" is modified by Business Liability Coverage Form Amendatory Endorsement SS 00 60 09 15, which is a part of the Policies effective 2016-23. In the 2015-16 Policy, the wording of subsection c. is slightly different and also incorporates a subsection h., which includes discrimination or humiliation. The differences are irrelevant to this coverage dispute.

13

*This insurance does not apply to "personal and advertising injury" and none of the references to "personal and advertising injury" in the policy apply.*

*This exclusion does not apply to "personal and advertising injury" arising out of the following offenses:*

     *a.    False arrest, detention or imprisonment;*

     *b.    Malicious prosecution; or*

     *c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor.*

*See* Exs. C-G.

**D.    *EPL COVERAGE***

25.    Subject to all of their terms, the EPL Coverage, Form SS 09 01 12 14, provides certain employment practices liability coverage and states, in part:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
(CLAIMS MADE)**

**NOTICE:  COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN:  COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS . . .**

        *     *     *

**SECTION I – INSURING AGREEMENT**

**Employment Practices Liability**

*We shall pay "loss" on behalf of the "insured" resulting from an "employment practices claim" first made against the "insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".*

**SECTION II - DEFINITIONS**

        *     *     *

14

C.      *"Claim" means any "employment practices claim."*

                    *      *      *

F.      *"Damages" means the amounts, other than "claim expenses", that the "insureds" are legally liable to pay solely as a result of a "claim" covered by this Coverage Part, . . .*

       *However, "damages" shall not include:*

       *a.   Taxes, fines or penalties imposed by law;*
       *b.   Non-monetary relief;*

                    *      *      *

I.      *"Employee" means any natural person who was, is or shall become a(n):*

       *1.   employee of an "insured entity" including any part time, seasonal, temporary, leased, or loaned employee; or*

       *2.   volunteer or intern with an "insured entity."*

                    *      *      *

K.      *"Employment practices claim" means any:*

       *1.   written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;*

       *2.   civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration or similar pleading; or*

       *3.   formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;*

       *by or on behalf of an "employee," an applicant for employment with an "insured entity," or an "independent contractor."*

15

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

L.     "Employment practices wrongful act" means:

1.     wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

2.     sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

3.     employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference; gender makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

4.     "Retaliation";

5.     breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

6.     violation of the Family and Medical Leave Act.

"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

16

a.  *employment-related wrongful infliction of mental anguish or emotional distress;*

b.  *failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;*

c.  *negligent retention, supervision, hiring or training;*

d.  *employment-related invasion of privacy, defamation, or misrepresentation; or*

e.  *an "employee data privacy wrongful act."*

*See* Exs. C-J.

**E.   UMBRELLA COVERAGE**

26.   Subject to all of their terms, the Umbrella Coverage, Form SX 80 02 04 05, provides

certain umbrella liability coverage and states, in part:

**SECTION I - COVERAGES**

**INSURING AGREEMENTS**

**A.   Umbrella Liability Insurance**

1.  *We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in* **Section IV – LIMITS OF INSURANCE.**

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under* **Section II - INVESTIGATION, DEFENSE, SETTLEMENT**.

2.  *This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:*

a.  *The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period";*

*See* Exs. C-J.

17

27.     The Umbrella Coverage also contains the following exclusions:

**B.     Exclusions**

* * *

**4.     Personal and Advertising Injury**[5]

*This policy does not apply to "personal and advertising injury".*

**EXCEPTION**

*This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies*

*This insurance does not apply to:*

**Access Or Disclosure Of Confidential Or Personal Information**

*"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.*

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.*

* * *

---

[5] In Policies effective 2016-23, Exclusion B. 4. Personal and Advertising Injury is amended via two Endorsements: the "Following Form Endorsement – Personal and Advertising Injury" Endorsement, Form SX 24 33 06 10, and the "Exclusion Access or Disclosure of Confidential or Personal Information and Data Related Liability – With Limited Bodily Injury Exception" Endorsement, Form SX 23 15 12 15. The amended wording is set forth herein. In the 2015-16 Policy, Exclusion B.4. states "personal and advertising injury" is excluded, but provides the exclusion does not apply if the underlying insurance is applicable to "personal and advertising injury" and to claims arising from "personal and advertising injury".

18

22. ***Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability[6]***

*Damages arising out of:*

(1)  *Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; . . .*

\* \* \*

24. ***Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information***

*"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:*

a.  *The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;*

b.  *The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or*

c.  *Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.*

*See* Exs. C-J.

28.  The Umbrella Coverage also contains the following Definitions:

***SECTION VII - DEFINITIONS***

***Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.***

---

[6] In Policies effective 2016-23, Exclusion B. 22 Electronic Data is amended via the Endorsement entitled "Exclusion Access or Disclosure of Confidential or Personal Information and Data Related Liability – With Limited Bodily Injury Exception", Form SX 23 15 12. The amended wording is set forth herein. In the 2015-16 Policy, Exclusion B. 22 states "Electronic Data. 'Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate 'electronic data'."

* * *

**D.**     ***"Damages"*** *means a monetary award, monetary settlement or monetary judgment. "Damages" include prejudgment interest awarded against the "insured" on that part of the judgment we pay.*

*The following are not considered "damages" and are not covered by this policy:*

1.     *Fines, penalties, sanctions or taxes;*

2.     *Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or*

3.     *Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of this policy.*

* * *

**F.**     ***"Occurrence"*** *means:*

1.     *With respect to "bodily injury" or "property damage", an "accident", including continuous or repeated exposure to substantially the same general harmful conditions; and*

2.     *With respect to "personal and advertising injury", an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".*

* * *

**I.**     ***"Underlying insurance"*** *means the insurance policies listed in the Extension Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:*

1.     *Any deductible amount;*

2.     *Any participation of any "insured"; and*

3.     *Any "self-insured retention" above or beneath any such policy. . .*

*See* Exs. C-J.

29.     The Umbrella Coverage also contains the following Endorsement, Form SX 22 95 10 08:

### LIMITATION OF COVERAGE - TECHNOLOGY SERVICES

*This endorsement modifies insurance provided under the following:*

### UMBRELLA LIABILITY PROVISIONS

*This insurance does not apply to:*

1.      *"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render professional services, including "technology services," as defined in this endorsement. This exclusion applies whether "technology services" are performed by you or by others on your behalf.*

* * *

**EXCEPTION**

*However, exclusion **1.** above does not apply to the extent that the underlying insurance applies to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render "technology services."*

*Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies.*

**Condition K – Maintenance of Underlying Insurance** *applies to this exception.*

*As used in this endorsement, "technology services" means the following:*

a.      *Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;*

b.      *Integration of systems;*

c.      *Processing of, management of, mining or warehousing of data;*

d.      *Administration, management, operation or hosting of: another party's systems, technology or computer facilities;*

e.      *Website development; website hosting;*

21

f.      *Internet access services; intranet, extranet or electronic information connectivity services; software application connectivity services;*

g.      *Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;*

h.      *Design and development of: code, software or programming; and*

i.      *Providing software application: services, rental or leasing.*

*See* Exs. C-J.

**F.      TENDER AND ACTUAL CONTROVERSY**

30.     On or about June 1, 2023, SmartLinx tendered the Underlying Action and Third-Party Complaint, seeking defense and indemnity from Hartford.

31.     Hartford denies that it owes SmartLinx any defense or indemnity obligation under the Policies.

32.     An actual justiciable controversy exists between Hartford and SmartLinx as to the availability of insurance coverage to SmartLinx under the Policies. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

**COUNT I**
**No "Bodily Injury" or "Property Damage" Caused by an "Occurrence"**
**(Business Liability and Umbrella Coverages – All Years)**

33.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

34.     Subject to all of their terms, the Business Liability and Umbrella Coverages provide certain coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policies.

22

35.     The claims in the Underlying Action and the Third-Party Complaint do not concern claims for damages because of "bodily injury" or "property damage" caused by an "occurrence."

36.     Accordingly, Hartford does not owe any defense or indemnity obligations to SmartLinx under the Business Liability or Umbrella Coverages for the claims in the Underlying Action or Third-Party Complaint.

**COUNT II**
**Personal and Advertising Injury Exclusion- Limited**
**(Business Liability Coverage  - Years 2015-20)**

37.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

38.     The Business Liability Coverage for years 2015-20 contain an Endorsement entitled "Personal and Advertising Injury Exclusion- Limited" which excludes coverage for "personal and advertising injury" unless such "personal and advertising injury" arises out of "a. False arrest, detention or imprisonment; b. Malicious prosecution; or c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor."

39.     The Underlying Action and the Third-Party Complaint do not allege "personal and advertising injury" arising out of "a. False arrest, detention or imprisonment; b. Malicious prosecution; or c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor."

40.     Accordingly, Hartford does not owe any defense or indemnity obligations to SmartLinx under the Business Liability Coverage for years 2015-20 for the claims in the Underlying Action or Third-Party Complaint.

23

**COUNT III**
**Exclusion B.1.(p)(11)**
**(Business Liability Coverage – All Years)**

41.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

42.     The Business Liability Coverage contains Exclusion B.1.(p)(11), which excludes coverage for any "personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

43.     BIPA is an Illinois State Act that creates a person's right to privacy.

44.     All of the damages sought in the Underlying Action and Third-Party Complaint arise from alleged violations of BIPA.

45.     Accordingly, Exclusion B.1.(p)(11) bars coverage for the Underlying Action and the Third-Party Complaint.

**COUNT IV**
**Access or Disclosure Exclusions**
**(Business Liability and Umbrella Coverages - Years 2016-23)**

46.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

47.     The Business Liability Coverage for years 2016-23 contains Exclusion B.1.(p)(15), and the Umbrella Coverage for years 2016-23 contain Exclusion B.4, as amended, and Exclusion B. 22, as amended, which all exclude coverage for any "personal and advertising injury" arising out of the arising out of any access to or disclosure of any person's or organization's confidential or personal information.

48.     The Underlying Action and Third-Party Complaint seek damages arising out of access to or disclosure of any person's confidential or personal information.

24

49.     Exclusions B.1.(p)(15) in the Business Liability Coverage for years 2016-23 bars coverage for the Underlying Action and the Third-Party Complaint.

50.     Exclusions B.4 and Exclusion B. 22 in the Umbrella Coverage for years 2016-23 bar coverage for the Underlying Action and the Third-Party Complaint.

**COUNT V**
**Exclusion B.1.(r)**
**(Business Liability Coverage – All Years)**

51.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

52.     The Business Liability Coverage contains Exclusion B.1.(r), which excludes coverage for any "personal and advertising injury" arising out of any employment related practices, whether the insured may be liable as an employer or in any other capacity.

53.     The Underlying Action and Third-Party Complaint seek damages arising out of the use of biometric time clocks, which is an employment related practice or policy.

54.     Accordingly, Exclusion B.1.(r) bars coverage for the Underlying Action and Third-Party Complaint.

**COUNT VI**
**Exclusion B.1.(j) Professional Services**
**(Business Liability Coverage – All Years)**

55.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

56.     The Business Liability Coverage contains Exclusion B.1.(j), which, as amended, excludes coverage for any "personal and advertising injury" arising out of the rendering of or failure to render any professional service, including but not limited to computer consulting, design, or programing services, including web site design.

25

57.     The Underlying Action and Third-Party Complaint seek damages arising from SmartLinx's computer consulting, design, or programing services.

58.     Accordingly, Exclusion B.1.(j) bars coverage for the Underlying Action and Third-Party Complaint.

### COUNT VII
### Exclusion B.1.(p)(8)
### (Business Liability Coverage – All Years)

59.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

60.     The Business Liability Coverage contains Exclusion B.1.(p)(8), which, as amended, excludes coverage for any "personal and advertising injury" arising out of an offence committed by an insured whose business is (a) advertising, broadcasting, publishing or telecasting; (b) designing or determining content of web sites for others; or (c) an internet search, access, content or service provider.

61.     The Underlying Action and Third-Party Complaint allege SmartLinx is in the business of (a) advertising, broadcasting, publishing or telecasting; (b) designing or determining content of web sites for others; or (c) an internet search, access, content or service provider.

62.     Accordingly, Exclusion B.1.(p)(8) bars coverage for the Underlying Action and Third-Party Complaint.

### COUNT VIII
### Exclusion B.1.(a)
### (Business Liability Coverage – All Years)

63.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

26

64.     The Business Liability Coverage contains Exclusion B.1.(a), which excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured  and "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

65.     The Underlying Action alleges intentional violations of BIPA.

66.     The Third-Party Complaint alleges intentional misrepresentations and that SmartLinx made knowingly false statements.

67.     Accordingly, Exclusion B.1.(a), bars coverage for the Underlying Action and Third-Party Complaint.

### COUNT IX
### Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information Exclusions
### (Business Liability and Umbrella Coverages – All Years)

68.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

69.     The Business Liability Coverage contains Exclusion B.1.t., and the Umbrella Coverage contains Exclusion B.24, which both exclude coverage for "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate. . . (3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

27

70.     The Underlying Action and Third-Party Complaint allege damages arising from BIPA, which is a statute that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

71.     Exclusion B.1.t. in the Business Liability Coverage and Exclusion B.24 in the Umbrella Coverage exclude coverage for the Underlying Action and Third-Party Complaint.

### COUNT X
### Exclusion B.1.b. Contractual Liability
### (Business Liability Coverage – All Years)

72.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

73.     The Business Liability Coverage contains Exclusion B.1.b., which excludes coverage for "bodily injury", "property damage" or "personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

74.     The Third-Party Complaint alleges damages and indemnification in connection with SmartLinx's alleged breach of an Agreement dated December 22, 2017.

75.     To the extent the Agreement is construed to obligate SmartLinx to pay damages by reason of the assumption of liability in a contract or agreement, Exclusion B.1.b. excludes coverage for the Third-Party Complaint.

### COUNT XI
### No Claim Made during Policies - Years 2015-22
### (EPL Coverage)

76.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

28

77.     The EPL Coverage is claims-made coverage and is only triggered by claims first made during the policy period in effect at the time the first claim is made.

78.     The claims in the Third-Party Complaint were first made against SmartLinx on August 3, 2022.

79.     The claims in the Underlying Action were first made against SmartLinx by way of Amended Complaint on August 19, 2022.

80.     No claim was made against SmartLinx during the Policies effective 2015-22.

81.     As such, Hartford owes no EPL Coverage under Policies effective 2015-22 to SmartLinx for the claims in the Underlying Action or Third-Party Complaint.

### COUNT XII
### No Employment Practices Claim or Employment Practices Wrongful Act
### (EPL Coverage - All Years)

82.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

83.     The claims in the Underlying Action and Third-Party Complaint are not claims resulting from an "employment practices claim" or an "employment practices wrongful act" as defined and required by the EPL Coverage.

84.     The claims in the Underlying Action and Third-Party Complaint are not made by SmartLinx's "employees" or "independent contractors" as defined in the EPL Coverage, therefore they are not "employment practices claims" as defined.

85.     Moreover, the Underlying Action and Third-Party Complaint do not concern an "employment practices wrongful act" insofar as they do not fall within the enumerated categories of claims in that definition.

29

86.     As such, Hartford owes no EPL Coverage to SmartLinx for the claims in the Underlying Action or Third-Party Complaint.

## COUNT XIII
## No Umbrella Coverage – Exclusion B.4
### (Umbrella Coverage – All Years)

87.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

88.     The Umbrella Coverage contains a Following Form Endorsement – Personal and Advertising Injury, Form SX 24 33 06 10.

89.     Exclusion B.4., as amended Following Form Endorsement – Personal and Advertising Injury, Form SX 24 33 06 10, provides the Umbrella Coverage follows form to the Business Liability Coverage with respect to any potential "personal and advertising injury".

90.     Therefore, for the reasons outlined with respect to the Business Liability Coverage above, there is also no potential coverage for this claim under the Umbrella Coverage.

91.     As such, Hartford owes no Umbrella Coverage to SmartLinx for the claims in the Underlying Action or Third-Party Complaint.

## COUNT XIV
## Limitation of Coverage – Technology Services
### (Umbrella Coverage – All Years)

92.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

93.     The Umbrella Coverage contains an endorsement entitled Limitation of Coverage – Technology Services, Form SX 22 95 10 08, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render

286443618v.1

professional services, including "technology services," as that term is defined in the Umbrella Coverage, unless the underlying insurance provides such coverage.

94.     The Underlying Action and Third-Party Complaint seek damages arising out of the rendering of or failure to render professional services, including "technology services," as that term is defined in the Umbrella Coverage.

95.     The Business Liability Coverage contains Exclusion B.1.(j), which excludes coverage for any "personal and advertising injury" arising out of the rendering of or failure to render any professional service, including but not limited to computer consulting, design, or programing services, including web site design.

96.     Thus, the Business Liability Coverage does not provide coverage for "personal and advertising injury" arising out of the rendering of or failure to render professional services, including "technology services".

97.     Accordingly, the Limitation of Coverage – Technology Services Endorsement bars coverage under the Umbrella Coverage for the Underlying Action and Third-Party Complaint.

**COUNT XV**
**Definition of Damages Does Not Include Fines or Penalties**
**(EPL and Umbrella Coverages – All Years)**

98.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

99.     The definition of "damages" in the EPL and Umbrella Coverages does not include fines, penalties, or sanctions or non-monetary relief.

100.     To the extent the sums sought in the Underlying Action or Third-Party Complaint are fines, penalties, or sanctions, coverage is not afforded.

31

101.     The Underlying Action also seeks an injunction, which is non-monetary relief and therefore not covered.

## COUNT XVI
### Personal and Advertising Injury During Policy Period
### (Business Liability and Umbrella Coverages – All Years)

102.     Hartford incorporates and restates the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

103.     The Business Liability and Umbrella Coverages only provide coverage for "personal and advertising injury" if the offense takes place during the "policy period".

104.     Moreover, Exclusion B.1.p.(2) in the Business Liability Coverage excludes coverage arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

105.     To the extent the Underlying Action or Third-Party Complaint alleges "personal and advertising injury", which Hartford denies, coverage is not afforded during a given Policy to the extent such offense did not occur during that given policy period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hartford prays this Court enter the following relief:

A.     A declaration finding Hartford owes no duty to defend or indemnify SmartLinx for the claims against it in the Underlying Action or Third-Party Complaint under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

Respectfully Submitted,

By:  /s/ Katherine E. Tammaro
Counsel for Hartford Casualty Insurance
Company

32

Katherine E. Tammaro
Wilson Elser Moskowitz Edelman & Dicker LLP
7 Giralda Farms
Madison, NJ 07940
(973) 624-0800
Katherine.Tammaro@wilsonelser.com

286443618v.1

## **CERTIFICATE OF SERVICE**

     I hereby certify that on September 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:           */s/ Katherine E. Tammaro*

               Counsel for Hartford Casualty Insurance Company

34